IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

ERNEST ALDERMAN,

    Plaintiff

v.              CIVIL ACTION NO.  2:10-cv-00907

FOLA COAL COMPANY, LLC, et al.,

    Defendants.

----------------

RONNIE G. ARNOLD,

    Plaintiff,

v.              CIVIL ACTION NO.  2:10-cv-00908

FOLA COAL COMPANY, LLC., et al.,

    Defendants.

----------------

GLEN J. DEBOARD,

    Plaintiff,

v.              CIVIL ACTION NO.  2:10-cv-00909

FOLA COAL COMPANY, LLC., et al.,

    Defendants.

----------------

JOSEPH E. FITZWATER,

1

         Plaintiff,

v.                  CIVIL ACTION NO.  2:10-cv-00910

FOLA COAL COMPANY, LLC., et al.,

         Defendants.

----------------

BILLY JOE QUERREY,

         Plaintiff,

v.                  CIVIL ACTION NO.  2:10-cv-00912

FOLA COAL COMPANY, LLC., et al.,

         Defendants.

----------------

DEAN E. TAYLOR,

         Plaintiff,

v.                  CIVIL ACTION NO.  2:10-cv-00913

FOLA COAL COMPANY, LLC., et al.,

         Defendants.

----------------

THOMAS C. VANCE,

         Plaintiff,

v.                  CIVIL ACTION NO.  2:10-cv-00914

FOLA COAL COMPANY, LLC., et al.,

         Defendants.

----------------

THOMAS B WILLIAMS ,

                Plaintiff,

v.                                                                CIVIL ACTION NO.  2:10-cv-00915

FOLA COAL COMPANY, LLC., et al.,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is the defendants' Motion for Summary Judgment [Docket 150]. For the reasons discussed below, this Motion is **GRANTED**.

**I.    Background**

    A.    *Facts*

This summary judgment motion consolidates several cases.  The plaintiffs are Ernest Alderman, Ronnie G. Arnold, Glen J. DeBoard, Joseph E. Fitzwater, Billy Joe Querrey, Dean E. Taylor, Thomas C. Vance, and Thomas B. Williams.  Each plaintiff claims that Fola Coal Company, LLC ("Fola") violated the West Virginia Human Rights Act ("WVHRA") by laying him off because of his age.

Fola operates a large surface and underground coal-mining complex in Clay County, West Virginia.  In February 2010, Fola conducted a large-scale reduction-in-force of its surface mining operations.  It laid off 167 of its 366 employees, including the plaintiffs in the instant cases.  Fola attributes the layoffs to adverse market conditions and court decisions in 2008 and 2009 that restricted its ability to mine coal.  By mid-2009, Fola had a surplus of surface coal, and

3

by November 2009, Fola had stockpiled 900,000 tons of coal. According to Fola, these surpluses made it infeasible to continue mining using its full workforce.

Fola claims that it conducted layoffs by assessing employees' performance, then their attitude, and finally their length of service. First, employees were laid off if they received any formal discipline after August 1, 2007, or if they caused two or more accidents that resulted in incident reports. Second, Fola examined employees' attitude, measured by assessments from management employees. Management was asked to evaluate how eager the employees were to do their job, whether they completed their job without input from supervisors, whether they complained often about job duties, and whether they refused to perform certain job functions for trivial reasons. Third, length of service was used as a tiebreaker when all other factors were equal. Employees who were hired prior to December 17, 2001, were not laid off under the length of service criterion. The employee handbook explained the selection process for a reduction-in-force; it stated that "The controlling factors are qualification, ability, attitude, attendance, and length of service of each employee." (Fola Coal Co. Employee Handbook [Docket 150-7], at Ex. G.) In the February 2010 layoffs, attendance was not an independent criterion, but if an employee's poor attendance resulted in formal discipline, then that employee would have been laid off.

Statistical evidence presented by the defendants shows that 40.8 percent of Fola's employees age 40 or over were laid off in the February 2010 reduction-in-force. In contrast, 59.6 percent of its employees under the age of 40 were laid off. Additionally, the average age of an employee prior to the reduction-in-force was 47.0, and the average age of an individual who was laid off was 45.2. (Decl. of Def.'s Statistical Expert [Docket 150-16], at Ex. P.)

According to Fola, Ernest Alderman was discharged from his position under the performance layoffs. He was formally disciplined in March 2009 because he drove his truck off while it was being fueled, causing equipment damage. As a result, he was suspended for four days. When asked why he thought he was laid off, Alderman responded that it was because of his age. More specifically, Alderman explained, "I had a lot of vacation time. I had a lot of stuff accumulated, what time I've worked at Fola, and then I had a lot of vacation. And then I think as you get older, your liability increases, and I think they just figured with age you're going to have problems, health issues." (Dep. of Ernest Alderman [Docket 150-13], at Ex. M, 200.) When asked whether there were times when he was not able to perform an assigned task, he said there were not. Moreover, neither managers nor supervisors stated to him that employees' age might affect their ability to do their job, and there were no jokes related to age made at the workplace. Alderman also said that he heard that his position was filled by Laddie Rush, who is in his fifties.

Alderman applied for Social Security disability benefits in March 2010 due to back and neck issues. He claimed that the onset date was February 18, 2010, two days before the reduction-in-force. Alderman began receiving monthly benefits in September 2010, which continue to this day.

Fola employee Doug Martin was a Safety Inspector during the February 2010 reduction-in-force, and he recommended that Ronnie Arnold be selected for layoff under the attitude criterion. Martin said that, "Arnold reacted flippantly to management instruction on important issues, including safety. . . . Arnold frequently refused to wear a hard hat or safety glasses after repeated instructions to do so." (Aff. of Doug Martin [Docket 150-19], at Ex. S, ¶ 7.) According to Martin, Arnold also complained about Fola's lottery system used for determining who

5

received vacation time during deer hunting season. Arnold alleges that he was laid off because of his age and because of his benefits.

Glen DeBoard was laid off, according to Fola, because of his length of service. During his deposition, DeBoard affirmed that it is his allegation that Fola discriminated against him because of his age. When asked how Fola discriminated against him, he said that he was no longer working at Fola.

Joseph E. Fitzwater was terminated from his position at Fola under the performance layoffs because he caused two accidents. In December 2008, as he was turning the tooth on a coal loader, the tooth fell out and struck him on the foot. In January 2009, the coal loader that Fitzwater was operating collided with another coal loader and damaged it. Fitzwater claims that Fola discharged him because he had worked at Fola for close to ten years, and after ten years the company would have invested in his retirement, insurance, and vacation time. When asked to clarify whether "they got rid of you for that reason," Fitzwater responded, "That reason and – plus my age." (Dep. of Joseph E. Fitzwater [Docket 150-11], at Ex. K, 166.) Like Alderman, Fitzwater denied that age-related jokes were made at the workplace or that any manager or supervisor said anything about his age. Instead, he claimed that, "they got rid of the old ones and kept . . . the younger men." (*Id.* at 169.) However, Fitzwater could recall only one employee who was younger than him and not laid off—Anthony Elswick.

Fola employee Doug Martin also recommended that Billy Joe Querrey be selected for discharge under the attitude criterion. He explained that Querrey was a "frequent complainer on the job." (Aff. of Doug Martin [Docket 150-19], at Ex. S, ¶ 9.) Specifically, he "frequently complained about how employees were selected for vacation at deer season. . . . He believed he should be given first dibs as it related to vacation time at deer season." (*Id.*) Martin also noted

that Querrey protested because he was unable to use one of Fola's service roads to travel from his home to work. When asked why he thought he was laid off, Querrey stated: "Age, the benefits I was getting." (Dep. of Billy Joe Querrey [Docket 150-13], at Ex. L, 54.) Querrey explained that he thought he was becoming a burden to Fola near retirement age. He did not, however, know what was included in his retirement benefits package. Querrey said that he thought his benefits vested at the age of fifty-five because, "It was just, you know, brought up around work." (*Id.* at 56.) He also stated that he was laid off because he had more vacation time than other employees.

Dean E. Taylor was hired around December 31, 2003, and he was laid off, according to Fola, under the length of service criterion. Taylor claimed that when he was laid off, Fola retained younger employees, including Brad Asbury and a son of one of the bosses. (Dep. of Dean E. Taylor [Docket 150-8], at Ex. H, 132.) According to Taylor, Asbury is in his forties. When asked to confirm his allegation that he was discriminated against because of his age, Taylor explained, "That's the reason why I figured we wasn't called back because of our age." (*Id.* at 166). He then stated that, "I think we was laid off because I wasn't there seven years." (*Id.*) Fola rehired Taylor in 2010.

Thomas C. Vance was laid off, according to Fola, under the attitude criterion. Martin explained that Vance complained about his repair duties and was disrespectful toward supervisors when given safety instructions. Vance thinks he was laid off because of his age, "because they kept guys younger than [him]" and because "[t]hey were less qualified." (Dep. of Thomas C. Vance [Docket 150-15], at Ex. O, 96.) Specifically, Vance said that Kyle Martin, who is in his early fifties, and Terry Boggs, who is in his mid-forties, are younger than him and were not laid off.

7

Thomas B. Williams was laid off under the length of service criterion. Williams was rehired by Fola in March 2010, but did not successfully complete the post-offer physical. He did, however, return to Fola in August 2011. In his deposition, Williams stated, "As far as I'm concerned, what they did – did whenever they laid me off, as far as I'm concerned, they did it legal. They went by seniority." (Dep. of Thomas B. Williams [Docket 150-9], at Ex. I, 215.) Williams clarified that, "I'm not kicking on getting laid off at all. I'm kicking on what they did after they laid us off." (*Id.*) More specifically, "My beef is that they went around what – the way they conduct my physical . . . and the way they went around me hiring these younger people. That's where I come up with the age discrimination." (*Id.* at 216.)

In response to the defendants' Motion for Summary Judgment, the plaintiffs submitted two affidavits by James Taylor and Benjamin Fitzwater. James Taylor was an employee at Fola and he worked with Ronnie Arnold. Taylor stated: "Ronnie Arnold did not disregard safety instruction and he was a safe employee in the work he performed for me as a member of the Blue Team. Ronnie Arnold made sure his machinery was in proper and safe working condition and followed all necessary safety instructions when performing his job." (Aff. of James Taylor [Docket 159], at Ex. A.) Additionally, he said that Arnold "complained about the vacation policy as did a lot of employees, especially when it came to hunting season." (*Id.*) Benjamin Fitzwater was also an employee at Fola. He stated, without identifying any specific plaintiff, that "the references of employees not being safety conscious or being injured on the job is in complete opposition to the awards that the employees received for working without injury." (Aff. of Benjamin Fitzwater [Docket 159], at Ex. B.) He also alleges that approximately two weeks to a month after the reduction-in-force, trains began to load the coal that had accumulated. Therefore, "the said slow down must have corrected itself within a short period of time." (*Id.*)

Finally, Fitzwater contends that he has observed new young employees at Fola who had little to no experience in the coal industry.

  B. *Procedural History*

The plaintiffs each filed their complaint in the Circuit Court of Clay County, West Virginia. The defendants removed the cases on July 15, 2010. These cases have been consolidated for the purposes of discovery and summary judgment. The defendants filed their Motion for Summary Judgment on August, 22, 2010, which is now ripe.

**II.** **Standard of Review**

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *Ross v. Comm'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *abrogated on other grounds*, 490 U.S. 228 (1989).

**III.     Analysis**

Under the West Virginia Human Rights Act, "It shall be an unlawful discriminatory practice . . . [f]or any employer to discriminate against an individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment if the individual is able and competent to perform the services required." W. Va. Code § 5-11-9(1). Discrimination is defined as, "to exclude from, or fail or refuse to extend to, a person equal opportunities because of . . . age." W. Va. Code § 5-11-3(h). "The term 'age' means the age of forty or above." W. Va. Code § 5-11-3(k). To make a *prima facie* case of employment discrimination, the plaintiff must prove: "(1) That the plaintiff is a member of a protected class.  (2) That the employer made an adverse decision concerning the plaintiff.  (3) But for the plaintiff's protected status, the adverse decision would not have been made." *Conaway v. E. Associated Coal Corp.*, 178 W. Va. 164, 170 (1986). If the plaintiff meets this burden, then the burden shifts to the employer "to show some nondiscriminatory reason for the decision." *Id.* at 171. That reason "need not be a particularly good one.  It need not be one which the judge or jury would have acted upon.  The reason can be any other reason except that the plaintiff was a member of a protected class." *Id.* The employee then has the opportunity "to rebut the employer's evidence with a showing that the stated reason was merely a pretext for discriminatory motive." *Id.*

Addressing the third prong of the *prima facie* test, the Supreme Court of Appeals of West Virginia recognized:

> Because discrimination is essentially an element of the mind, there will probably be very little direct proof available. Direct proof, however, is not required. What is required of the plaintiff is to show some evidence which would sufficiently link the employer's decision and the plaintiff's status as a member of a protected class so as to give rise to an inference that the employment decision was based on an illegal discriminatory criterion. This evidence could, for example, come in the form of an admission by the employer, a case of unequal or disparate treatment between members of the protected class and others by the elimination of the apparent legitimate reasons for the decision, or statistics in a large operation which show that members of the protected class received substantially worse treatment than others.

*Id.* at 171. The "but for" test is a threshold inquiry that requires a plaintiff to show an inference of discrimination. *Barefoot v. Sundale Nursing Home*, 193 W. Va. 475, 484 (1995) ("Use of the 'but for' language in that test may have been unfortunate, at least if it connotes that a plaintiff must establish anything more than an inference of discrimination to make out a *prima facie* case."). In analyzing the burden-shifting scheme, I look to federal employment discrimination law to the extent that it is consistent with the WVHRA. *See Ways v. Imation Enterprises, Corp.*, 214 W. Va. 305, 315 n.9 (2003) ("[The Supreme Court of Appeals of West Virginia] has consistently held that cases brought under the West Virginia Human Rights Act, W. Va. Code 5-11-1, *et seq.*, are governed by the same analytical framework and structures developed under Title VII, at least where our statute's language does not direct otherwise.") (quoting *Barefoot*, 193 W. Va. at 482).

There is no dispute that the plaintiffs were all at least forty years old when discharged and suffered adverse employment decisions by Fola. Under the third prong, the plaintiffs must show evidence that links Fola's decision to their status as individuals of the protected class to give rise to an inference that their layoffs were based on their age. The only pieces of evidence before the court supporting the plaintiffs' allegations are the portions of the plaintiffs' depositions submitted by the defendants in support of their Motion for Summary Judgment. The plaintiffs

did not provide an admission by Fola, concrete examples of illegitimate disparate treatment between members of the protected class and others, or statistical evidence. Each plaintiff bears the burden of proof in his case. However, because there is significant overlap in the means by which the plaintiffs seek to prove their cases, I examine the evidence collectively.

The depositions contain the following to advance the plaintiffs' *prima facie* case of age discrimination: (1) Alderman, Arnold, DeBoard, Fitzwater, Querrey, and Vance assert that they were laid off because of their age; (2) Alderman, Arnold, Fitzwater, and Querrey claim that Fola terminated their employment to avoid providing them with retirement benefits and vacation time; (3) Alderman stated: "I think they just figured with age you're going to have problems, health issues."; (4) Alderman thinks that his position was filled by Laddie Rush; (5) Fitzwater, Williams, Taylor, and Vance allege that younger men were not laid off; and (6) Fitzwater, DeBoard, Taylor, and Williams complain about Fola's rehiring practices after the 2010 reduction-in-force. This is insufficient for a reasonable juror to find that any of the plaintiffs have proven a *prima facie* case of age discrimination. It fails to raise an inference of discrimination by showing a nexus between the Fola's decisions and the plaintiffs' status as members of the protected class.

First, the plaintiffs' bald assertions that they were laid off because of their age are not enough to create a triable issue of material fact. *See Evans v. Tech. App. & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996) ("Evan's unsubstantiated allegations and bald assertions concerning her own qualifications and the shortcomings of her co-workers fail to disprove TAS's explanation or show discrimination."); *Goldberg v. B. Green & Co., Inc.*, 836 F.2d 845, 848 (4th Cir. 1988) ("Goldberg's own naked opinion, without more, is not enough to establish a prima facie case of age discrimination."); *Stoyanov v. Winter*, Civ. Nos. RDB 05-1567, RDB 05-1611, 2007 WL

2359771, at *6 (D. Md. Aug. 15, 2007) ("[U]nsubstantiated allegations and bald assertions will not carry the day for the employee.").

Second, the plaintiffs provide no evidence that Fola in fact laid them off to avoid providing them with retirement benefits and vacation time. And the assertions the plaintiffs made were generalized. For example: "Because over 50 I think I was, I guess, becoming a burden for them. I was getting close to retirement age." (Aff. of Billy Joe Querrey [Docket 150-13], at Ex. L, 54.); "I had a lot of stuff accumulated, what time I've worked at Fola, and then I had a lot of vacation." (Dep. of Ernest Alderman [Docket 150-13], at Ex. M, 200.); "All your vacation and everything else, you get your – plus my age. And I feel that's the reason they got rid of me." (Dep. of Joseph E. Fitzwater [Docket 150-11], at Ex. K, 166.); "Because of my age, because I had all the experience and I had all the benefits and everything to go with it." (Dep. of Ronnie Arnold, [Docket 150-14], at Ex. N, 178.).

Even if the plaintiffs had proof that they were laid off so that Fola could avoid providing retirement benefits and vacation time, this is insufficient to prove a *prima facie* case of age discrimination. In the context of the Age Discrimination in Employment Act ("ADEA"), the U.S. Supreme Court explained that the purpose of the statute was to address the concern that, "older workers were being deprived of employment on the basis of inaccurate and stigmatizing stereotypes." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993). Accordingly, "[w]hen the employer's decision *is* wholly motivated by factors other than age, the problem of inaccurate and stigmatizing stereotypes disappears. This is true even if the motivating factor is correlated with age, as pension status typically is." *Id.* at 611. Nevertheless, targeting individuals with particular pension statuses may violate the ADEA if such status is a proxy for age. *Id.* at 612-13. The Court noted that an employer's decision to fire an employee to prevent his pension benefits

13

from vesting is unlawful under ERISA, "[b]ut it would not, without more, violate the ADEA." *Id.* at 612. Here, the plaintiffs present no evidence that pension status was a proxy for age and that the underlying motivation for the plaintiffs' termination was a discriminatory animus.[1]

Similarly, the plaintiffs' allegations that Fola laid them off to avoid providing them with their vacation time fail. If the sole motivation was to eliminate employees with more vacation time, this does not violate the WVHRA. *See Hazen Paper Co.*, 507 U.S. at 612. Additionally, the plaintiffs do not show that vacation time is a proxy for age or that the true motivation for firing the plaintiffs was their age.

Third, Alderman's statement that Fola may have been concerned about his potential health issues is entirely speculative. He responded to follow-up questions by stating that there was never a time when he was not able to perform a task or a time that a supervisor or manager expressed that an employee's age affects his ability to do his job. Moreover, recognition that health issues may increase with age is not in itself evidence of age discrimination. *See Dockins v. Benckmark Commc'ns*, 176 F.3d 745, 749 (4th Cir. 1999) ("[E]ven if Laconte discussed Dockins' health, that fact in no way implies he was discriminating against Dockins because of his age. Health problems do increase with age. Consequently, rather than indicating a discriminatory purpose, such statements seem only truisms. Stating a fact of life does not make one an age bigot.") (internal citation and punctuation omitted).

Fourth, Alderman thinks that his position was filled Laddie Rush, who Alderman suspects is in his fifties, maybe fifty-five. It is unclear whether Rush is younger or older than Alderman, but Alderman said that Rush is within five years of his age. Even if Rush is younger

---

[1] As noted in the defendants' Memorandum, "even if Plaintifs were laid off so that Fola could avoid paying retirement benefits . . . Plaintiffs' claims in this regard are pre-empted by ERISA." *See Hoops v. Elk Run Coal Co., Inc.*, 57 F. Supp. 2d 357, 360 (S.D. W. Va. 1999) ("Plaintiffs clearly assert [that] their termination by Elk Run was for the primary purpose of interfering with their attainment of rights under the applicable plans . . . [s]uch conduct . . . clearly violates section 510 of ERISA, however, and it falls squarely within the federal statute's civil enforcement scheme.").

than Alderman, this does not prove a *prima facie* case of age discrimination because Rush is also a member of the protected class. *See Young v. Bellofram Corp.*, 705 S.E.2d 560, 566 (W. Va. 2010) ("Thus, being members of the same protected age class, the allegedly lenient treatment of Donnie Shuman cannot sustain Ms. Young's age discrimination claim."); *see also Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 512 (4th Cir. 1994) ("In a reduction of work force case, the fact that the duties of a terminated older employee were assumed by a younger individual is not conclusive of age bias.").

Fifth, the plaintiffs allege that some younger individuals were not laid off. Fitzwater asserted that Anthony Elswick retained his position, but there is no evidence that Elswick was under forty years old at that time. Taylor claims that Brad Asbury and the boss's son kept their jobs. He thinks that Asbury is in his forties and presented no evidence of the age of the boss's son. Williams also mentioned Asbury as an example of a younger employee who was not laid off. Finally, Vance pointed to Kyle Martin and Terry Boggs, and he thinks Martin is in his early fifties and Boggs in his mid-forties. These claims fail because the plaintiffs presented no proof that any of these individuals were not members of the protected class. *Young*, 705 S.E.2d at 566.

Finally, several employees expressed concerns about Fola's re-hiring practices after the February 2010 reduction-in-force. Fitzwater said Fola called younger men back while getting rid of older men. Specifically, he and DeBoard complain that Sammy Neal was rehired. Neal was over the age of forty when he was laid off by Fola. Taylor identified a number of people who were hired back before him that were younger, including Steve McKinney and Jeff Salisbury. He thinks that McKinney was in his forties and Salisbury was in his upper-forties. Once again, because these individuals are also members of the protected class, their potentially more lenient treatment cannot be used to establish age discrimination. *Young*, 705 S.E.2d at 566.

15

Taylor and Williams complain exclusively about Fola's rehiring practices, rather than the manner in which Fola discharged them. An allegation of a failure to rehire is a separate claim that was not alleged in the plaintiffs' complaints. *See Lawson v. Burlington Indus., Inc.*, 683 F.2d 862, 863 (4th Cir. 1982) ("Illegal layoff . . . does not encompass an allegation of illegal failure to rehire."); *McJunkin Corp. v. West Virginia Human Rights Comm'n*, 179 W. Va. 417, 422 (1988). Therefore, Taylor's and Williams's allegations about how Fola rehired former employees are outside the scope of their complaints.

As noted earlier, the plaintiffs did not provide any statistical evidence, admissions by Fola, or examples of differential treatment that are not explained by legitimate motives. I have only the statements made by the plaintiffs in their depositions, which amount to no more than vague speculation. Taking the evidence in the light most favorable to the plaintiffs, I **FIND** that no reasonable juror could conclude that the plaintiffs' depositions sufficiently link the plaintiffs' termination from their jobs at Fola and their age to raise an inference of discrimination.

Even if the plaintiffs were able to prove a *prima facie* case of age discrimination, the defendants have proffered a nondiscriminatory reason for the layoffs. According to Fola, the reduction-in-force was necessary because of court decisions and adverse market conditions. To effectuate the reduction-in-force, the defendants used three criteria—performance, attitude, and length of service. The defendants have alleged that Alderman and Fitzwater were laid off under the performance criterion; Arnold, Querrey, and Vance were laid off because of their attitude; and DeBoard, Taylor, and Williams were laid off due to their length of service.

The burden now rests on the plaintiffs to prove that the defendants' stated reasons for the layoffs were merely a pretext for a discriminatory motive. *Conaway v. E. Associated Coal Corp.*, 178 W. Va. 164, 171 (1986). The plaintiffs have presented the affidavits of two Fola

employees, James Taylor and Benjamin Fitzwater. Taylor was a Strip Foreman for the mining operations. Taylor states that he was on the same team as Ronnie Arnold and that Arnold did not disregard safety instructions and was a safe employee. He admits that Arnold complained about vacation policy, like a lot of employees, but claims that Arnold did not demonstrate a poor attitude and was a dependable worker. However, Fola alleges that Arnold reacted poorly to *management* instructions. Taylor, who not a manager, does not claim that these allegations are false. Accordingly, this affidavit does not show that Fola's stated reason for laying him off was a pretext.

Fitzwater claims that in his position as a Preparation Plant Operator, he was familiar with the coal operations. He asserts that the employees completed their jobs safely and concludes that "references of employees not being safety conscious or being injured on the job is in complete opposition to the awards that the employees received for working without injury." (Aff. of Benjamin Fitzwater [Docket 159], at Ex. B.) He also alleges that two weeks to a month after the layoffs, Fola began to deliver coal to purchasers. Finally, he explained that he observed individuals who had been hired after the February 2010 reduction-in-force who "have very little and sometimes no experience in the coal industry." (*Id.*) None of Fitzwater's conclusory statements are grounded in specific facts. Moreover, with regard to the coal deliveries, a defendant is not required to show that its reason for laying off employees was a wise or prudent one. *See Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 513 (4th Cir. 1994) ("The ADEA was not intended to obstruct the ability of a commercial enterprise to make necessary adjustments in the face of economic challenges."); *E.E.O.C. v. Clay Printing Co.*, 955 F.2d 936, 946 (4th Cir. 1992) ("It is not the purpose . . . of this court to second guess the wisdom of business decisions."). At best, Fitzwater's statement could suggest that Fola's decision to lay off

employees was premature. This, however, does not show that its stated reasons are a pretext for a hidden discriminatory motive.

The defendants' statistical evidence further reveals the weakness of the plaintiffs' argument that Fola's stated reasons for the layoffs are a pretext. It demonstrates that in the February 2010 reduction-in-force Fola laid off 40.8 percent of its employees age 40 or over and 59.6 percent of its employees under the age of 40. And the average age of a Fola employee prior to the reduction-in-force was 47.0, but the average of an individual who was laid off was 45.2. (Decl. of Def.'s Statistical Expert [Docket 150-16], at Ex. P.)

In conclusion, the plaintiffs' speculative and conclusory statements made in their depositions do not create a triable issue of material fact as to whether they made a *prima facie* case of age discrimination. Moreover, no reasonable juror could find that the two affidavits show that the defendants' nondiscriminatory explanation for the layoffs is a pretext.[2] Therefore, I **FIND** that the plaintiffs' claims fail as a matter of law and **GRANT** the defendants' Motion for Summary Judgment.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: November 7, 2011

Joseph R. Goodwin, Chief Judge

---

[2] Alderman's claim fails for another reason. Under the WVHRA, an employer cannot discriminate against an individual, "if the individual is able and competent to perform the services required." W. Va. Code § 5-11-9(1). Alderman is judicially estopped from claiming that he was able and competent to perform his job because he successfully applied for and received Social Security disability benefits based on an onset date of February 18, 2010, two days before the reduction-in-force. *King v. Herbert J. Thomas Memorial Hosp.*, 159 F.3d 192 (4th Cir. 1998) (finding that the plaintiff was judicially estopped from bringing an age discrimination claim under the WVHRA when she received disability benefits and claimed an onset date one week before her discharge).